# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

TARA NICOLE SLOAN                 PLAINTIFF

V.              CIVIL ACTION NO.: 1:07CV245-SA-JAD

CRAIG SHANNON AND
TUPELO PUBLIC SCHOOL DISTRICT          DEFENDANTS

## MEMORANDUM OPINION ON SUMMARY JUDGMENT

Presently before the Court is Defendants' Motion for Summary Judgment [48] and Defendants' Supplemental Motion for Summary Judgment [60]. After careful consideration, the Court specifically finds as follows:

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, Tara Sloan, a part-time security officer in the Tupelo School District, filed this action against the Tupelo Public School District ("TPSD") and Craig Shannon, the Principal at Fillmore Attendance Center, the school district's alternative school, alleging that she was sexually harassed by Shannon and subsequently retaliated against because of her complaint. Sloan began her employment with TPSD at the Fillmore Attendance Center. Terry Hatch is the Head of Security for the TPSD and all security officers in the school district reported to him. Sam Ford was the supervising security officer at the Fillmore Attendance Center beginning in 2006-2007 school year. On August 10, 2006, at the beginning of the 2006-2007 school year, Sloan contends Shannon began making inappropriate comments to her. Shannon's last inappropriate comment was on August 31, 2006. Sloan alleges Shannon made the following comments during this period of time:

1. During a conversation on August 10, 2006, wherein Sloan suggested Shannon buy some donuts for the staff, Shannon allegedly responded, "Well, I got a chocolate donut that's full of cream."

2. On August 17, 2006, Shannon allegedly asked Sloan, "When was the last time you had an

orgasm? And then offered, "I could help you have one."

3. Sloan referenced another incident on August 17, 2006, wherein Shannon allegedly asked Sloan to put her hands against the wall and allow Officer Ford to frisk her.

4. On August 25, 2006, Shannon allegedly commented as he was walking passed Sloan in the hall, "Umm, umm, if you only knew what I wanted to do to you."

5. The other comment allegedly made by Shannon to Sloan occurred on August 31, 2006, wherein Shannon stated, "you're wrong for posting up like that." Sloan testified that this was offensive because Shannon was "looking at my backend."[1]

6. The last comment allegedly made by Shannon to Sloan also occurred on August 31, 2006, where Shannon stated, "I can't help it if I'm fine and you can't resist me."

Shannon denies that he made any of above listed comments. Sloan contends that Sam Ford was present during Shannon's August 17 comment related to frisking and alleges she sought advice from Ford as to what she should do about Shannon's comments. Sloan contends she told Ford after the doughnut remark and the frisking remark that she did not appreciate Shannon's comments, and his comments made her uncomfortable. According to Sloan, Ford advised her that "he would handle it." However, Ford denies that he ever observed any inappropriate conduct by Shannon or that Sloan ever reported any harassment by Shannon to him.

Sloan continued to work as a part-time security officer at Fillmore through September and October without incident with respect to Shannon. Although Shannon made no further inappropriate comments to Sloan after August 31, 2006, Sloan contends Shannon and her other co-workers stopped talking to her. Then, in the last week in October or early November, Shannon received the Fillmore security officer's November work schedule. Sloan was reduced from two days a week to one day a week. According to Officer Ford, he made the decision to reduce Sloan's hours because

---

[1] All parties are in agreement that the last comment allegedly made by Shannon occurred on August 31, 2006.

of job performance issues. Then at the beginning of 2007, Shannon was transferred to the Tupelo High School.

Sloan brings claims of sexual harassment, retaliation, and equal protection claims against the school district. Sloan also brings separate claims of equal protection violations, tortious interference with employment, and intentional and/or negligent infliction of emotional distress against Shannon individually.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is apposite "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(C). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." Ginsberg 1983 Real Estate Partnership v. Cadle Co., 39 F. 3d 528, 531 (5th Cir. 1994) (internal citations omitted). The party moving for summary judgment bears the initial responsibility of apprising the district court of the basis for its motion and the parts of the record which indicate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

"Once the moving party presents the district court with a properly supported summary judgment motion, the burden shifts to the nonmoving party to show that summary judgment is inappropriate." Morrison v. Covan World Wide Moving, Inc., 144 F. 3d 377, 380 (5th Cir. 1998). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202

(1986). But the nonmovant must "do more than simply show that there is metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Moreover, "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. Anderson, 477 U.S. at 252, 106 S. Ct. 2505. The nonmovant must instead come forward with "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(E). Summary judgment is properly rendered when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322, 106 S. Ct. 2548.

### III. ANALYSIS

A.  Quid Pro Quo

Title VII of the Civil Rights Act of 1964 mandates that "[i]t shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's sex . . . ." 42 U.S.C. 2000e-2(a)(1)(2006). In a Title VII sexual harassment action, the plaintiff ordinarily must prove "(1) [t]hat she belongs to [a] protected class; (2) that she was subject to unwelcome sexual harassment; (3) that the harassment was based on sex; (4) that the harassment affected a 'term, condition or privilege of employment,' and (5) that the employer either knew or should have known of the harassment and failed to take prompt remedial action." DeAngelis v. El Paso Mun. Police Officers Ass'n, 51 F.3d 591, 593 (5th Cir. 1995). However, "where the harassment is allegedly committed by a supervisor with immediate authority over the harassment victim, the plaintiff needs to satisfy only the first four elements listed

4

above." Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 353-54 (5th Cir. 2001) (citing Faragher v. City of Boca Raton, 524 U.S. 775, 807, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998)).

Here, Sloan has sufficiently demonstrated that she was a member of the protected class and was exposed to unwelcome sexual harassment because of her sex. The first three elements of her sexual harassment claim are therefore satisfied.

As to the fourth prong, a plaintiff can show that a term, condition, or privilege of her employment was affected in one of two ways: quid pro quo harassment or hostile work environment harassment. Only if an employee has been subjected to a tangible employment action is her claim of the quid pro quo variety; otherwise, the claim is classified as one for hostile work environment. Id.

If the employee can prove that she was exposed to a tangible employment action, she must then demonstrate that said action resulted from her acceptance or rejection of her supervisor's purported misconduct. Id. If such a nexus is proven, then the employer is vicariously liable per se and is precluded from utilizing the Faragher/Ellerth affirmative defense. Defendants, in moving for summary judgment on Plaintiff's sexual harassment claim, categorized the claim as one for hostile work environment as opposed to quid pro quo. In response to the summary judgment motion, Sloan, although highlighting this as a hostile work environment claim, argues this case could also be classified as a quid pro quo harassment case. The Court finds Sloan's argument is not supported by the Complaint. As noted above, Plaintiff must demonstrate she was exposed to a tangible employment action that resulted from her acceptance or rejection of her supervisor's purported misconduct. Sloan does not submit in her Complaint that the employment actions taken against her was caused by her acceptance or rejection of Shannon's advances; rather, she contends such

5

occurrences were due to the fact she reported Shannon's alleged misconduct to Ford. Sloan's Complaint confines this allegation to her retaliation claim; therefore, Plaintiff's claim for sexual harassment will be treated as a hostile work environment claim.

B.   Hostile Work Environment

As mentioned above, the Court concludes that Sloan has come forward with sufficient proof that she was a member of a protected class and was exposed to unwelcome sexual harassment because of her sex. The next question is whether "[i]f proved, would the actions ascribed . . . constitute severe or pervasive sexual harassment?" Casiano v. AT & T Corp.. 213 F.3d 278, 284 (5th Cir. 2000). "For harassment to be sufficiently severe or pervasive to alter the conditions of the victim's employment, the conduct complained of must be both objectively and subjectively offensive." EEOC v. WC & M Enters., Inc., 496 F.3d 393, 399 (5th Cir. 2007). In determining whether a victim's work environment was objectively offensive, courts consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id.

The Fifth Circuit has held that "offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in 'terms and conditions of employment.'" Indest v. Freeman Decorating, Inc., 164 F.3d 258, 264 (5th Cir. 1999) (citing Faragher v. City of Boca Raton, 524 U.S. 775, 787, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998)). Conduct that is merely "boorish and offensive" will not constitute hostile work environment. Septimus, 399 F.3d at 612. Actionable harassment must be "both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so."

Shepherd v. Comptroller of Pub. Accounts of State of Texas, 168 F.3d 871, 874 (5th Cir. 1999).

The Fifth Circuit has rejected numerous cases where the alleged conduct was merely offensive and not sufficient to be actionable. See, e.g., Wilkinson v. Potter, 236 Fed. Appx. 892 (5th Cir. 2007) (holding that touching employee briefly and lingering in her work area were not so threatening or humiliating as to prevent her from succeeding in the workplace). In Shepard, the Fifth Circuit found the cumulative effect of employer: (1) telling employee "your elbows are the same color as your nipples;" (2) simulating looking under employee's dress and attempting to look down her clothing several times; (3) employer touching her on several occasions by "rubbing one of his hands from her shoulder down to her wrists;" and (4) employer patting his lap and remarking "here's your seat" while the plaintiff was searching for a place to sit were all insufficient to create a hostile or abusive work environment. See Shepherd v. Comptroller of Public Accounts of State of Texas, 168 F.3d 871, 872 (5th Cir. 1999).

Sloan has demonstrated that she subjectively perceived Shannon's actions to be offensive. Viewing the evidence in the light most favorable to Sloan, there is sufficient evidence from which a jury could conclude that Shannon's comments were sufficiently severe as to alter the conditions of her employment and create an abusive working environment. The record reflects that Shannon made six comments, some in front of co-workers, in a span of 17days, two of which were especially egregious. Upon consideration of the above factors in light of the entire record, the Court is of the opinion that the alleged statements made by Shannon were more than "a mere offensive utterance" and that some of the statements were severe and humiliating. While making all legitimate factual inferences in favor of the non-movant, the Court is satisfied that a reasonable trier of fact could find that the alleged conduct against Sloan was sufficiently severe or pervasive to meet the Title VII

burden. Therefore, the Court concludes Sloan has created a genuine issue of fact as to whether the alleged harassment affected a term, condition, or privilege of her employment.

TPSD can nevertheless avoid liability under the Faragher/Ellerth affirmative defenses if it "prove[s] by a preponderance of the evidence '(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.'" Lauderdale v. Texas Dept. of Criminal Justice, Institutional Div., 512 F.3d 157, 164 (5th Cir. 2007) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998)).

At all relevant times, TPSD had in place a sexual harassment policy which defined sexual harassment, indicated that sexual harassment was prohibited by the school district, informed employees what to do if they believed they were being harassed, and stated that alleged violations would be followed with confidential, prompt, and appropriate action to protect individuals from further harassment. Sloan testified that she received and read a copy of TPSD's sexual harassment policy when she was hired. Sloan also testified that she knew to report allegations of sexual harassment to Ford, her immediate supervisor. The Court is therefore of the opinion that TPSD had in place a reasonable policy for preventing and reporting sexual harassment during the period of time in which Sloan claims she was being harassed by Shannon.

A genuine issue of material fact does exist as to whether TPSD acted with reasonable promptness to correct Shannon's harassment of Sloan. Although TPSD disagrees, Sloan contends she reported Shannon's harassment to Ford after the doughnut remark and the frisking remark. The parties do agree, however, that no investigation was conducted into Shannon's alleged harassment

of Sloan until sometime in November 2006, after Shannon was informed by an investigator from Jim Waide's office that Sloan had retained counsel regarding his alleged harassment. Thus, the answer to the question of whether TPSD's corrective response to Shannon's harassment of Sloan was reasonable depends on whether Sloan actually reported she was being harassed to Ford.

The parties have presented their version of the events, and the Court will not engage in weighing that evidence or determining credibility. Accordingly, Defendants' Motion for Summary Judgment is denied as to Plaintiff's hostile work environment claim.

C. Retaliation

(1) Title VII

In order to maintain an action for retaliation, a plaintiff must make a prima facie showing that: (1) she participated in an activity protected by Title VII, (2) the employer took an adverse employment action against her, and (3) a causal link exists between the protected activity and the adverse employment action. Banks v. E. Baton Rouge Parish Sch. Bd., 320 F.3d. 570, 575 (5th Cir. 2003). Under Title VII, a plaintiff may prove retaliation either by direct or circumstantial evidence. McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir. 2007). A case built on circumstantial evidence, like this one, is analyzed pursuant to the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). If the plaintiff is able to establish a prima facie case, the burden shifts to the employer to produce a legitimate, non-discriminatory reason for the employment action. Gee v. Principi, 289 F.3d 342, 345 (5th Cir. 2002). If the employer meets this burden of production, the plaintiff must then prove that the employer's proffered reason is pretext for an actual, retaliatory purpose. McCoy, 492 F.3d at 557.

9

Sloan's report of Shannon's harassment to Ford, if true, was activity protected under Title VII. Green v. Adm'rs of Tulane Educ. Fund, 284 F.3d 642, 657 (5th Cir. 2002). An adverse employment action in the retaliation context is any action which "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006) (internal quotations and citations omitted). The Court holds that a reasonable jury could find that cutting Sloan's work hours in half – from two days a week to one day a week – amounts to an adverse employment action. However, the Court is not convinced Sloan's transfer from Fillmore Alternative School to Tupelo High School at the beginning of 2007 constitutes an adverse employment action as Plaintiff testified she was permitted to work as many hours as she wanted at Tupelo High School at the same rate of pay as Fillmore Alternative School.

"Close timing between an employee's protected activity and an adverse action against him may provide the 'casual connection' required to make out a prima facie case of retaliation." Swanson v. Gen. Serv. Admin., 110 F.3d 1180, 1187 (5th Cir. 1997). The record reflects that Sloan spoke with Ford after Shannon's doughnut remark, the frisking remark, and after Shannon stated to Sloan "if you only knew what I wanted to do to you." Sloan contends that she informed Ford she did not appreciate Shannon's comments, and that his comments made her uncomfortable. The alleged sexual harassment by Shannon took place from August 10, 2006, until August 31, 2006. Two months later, Sloan's work schedule was cut from two days a week to one day a week. The passage of two months between Plaintiff's undertaking a protected activity and her cut in hours would permit a reasonable jury to infer a causal nexus between the two events. See Evans v. City of Houston, 246 F.3d 344, 354 (5th Cir. 2001) (The Fifth Circuit has recognized that a time lapse

of up to four months has been found to satisfy the causation element of a prima facie case for retaliation.); but see; Raggs v. Mississippi Power & Light Co., 278 F.3d 463, 472 (5th Cir. 2002) (five month period insufficient). Accordingly, the Court finds that Plaintiff has presented a prima facie case for her retaliation claim.

TPSD advances the legitimate, nondiscriminatory reason of poor work performance. Specifically, Ford testified there were at least three job related issues that he believed warranted a reduction in hours: (1) On October 26, 2006, Sloan allowed a student to leave campus with another student without permission of a school administrator. (2) On October 30, 2006, Ford asked Sloan to attend a field trip with the students. Sloan responded, "I don't want to go on that G –D–trip with those kids. Let Officer Knight go." (3) On November 17, 2006[2], Sloan failed to walk students to the bathroom as instructed. According to Ford, Sloan was assigned to hall duty on the south end of the building. It is against school policy for students to be in the bathroom without an adult present. On this day, Ford discovered two students in the bathroom unsupervised, and Sloan was not at her post. Ford contends Sloan had been asked not to leave the hallway if there is not another officer present. Ford later found Sloan at the snack machine.

"Once the employer offers a legitimate, nondiscriminatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer that retaliation was the real motive." McCoy v. City of Shreveport, 492 F.3d 551, 562 (5th Cir. 2007). The plaintiff's evidence must allow a reasonable jury to conclude that the employer's justification is unworthy of credence. Mato v. Baldauf, 267 F.3d 444, 452 (5th Cir. 2001). Ford and

---

[2] Although Ford lists this incident as one of the reasons he decided to cut Sloan's hours, the bathroom incident occurred after the decision to cut her hours was made, which was sometime in late October, early November.

11

Hatch testified that the decision to cut Sloan's hours was made to discipline her for performance issues and to get her attention. In fact, Hatch admitted it would be important to inform Sloan of the disciplinary issues requiring the cut in her work schedule. However, Hatch conceded that he never spoke to Sloan about her job performance, and Ford could not recall whether he ever spoke to Sloan or not. As for the three job related issues provided by Ford, Sloan denies all of Ford's allegations of poor job performance, and further denies ever being told her hours were being cut because of "performance issues." The Court finds that these facts, if proven, could reasonably call into question Ford's proferred explanation and could therefore permit a reasonable jury to discern that TPSD's legitimate, nondiscriminatory reason is pretextual. As a result, Defendants are not entitled to judgment as a matter of law regarding the Title VII retaliation claim.

(2) First Amendment

It is well established that "public employees do not surrender all their First Amendment rights by reason of their employment," Jordan v. Ector County, 516 F.3d 290, 294-95 (5th Cir. 2008) (citation omitted), and that a public employee may not be retaliated against for exercising her right to free speech. Thompson v. City of Starkville, 901 F.2d 456, 460 (5th Cir. 1990). See also, Davis v. McKinney, 518 F.3d 304, 312 (5th Cir. 2008) ("The First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen on matters of public concern.") (citing Pickering v. Bd. of Educ., 391 U.S. 563, 568, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968)).

To maintain a First Amendment retaliation claim under Section 1983, a plaintiff must how that (1) she suffered an adverse employment action, (2) her speech involved a matter of public concern, (3) her interest in commenting on matters of public concern outweighed the government's interest in promoting efficiency, and (4) her speech motivated the adverse employment action.

Nixon v. City of Houston, 511 F.3d 494, 497 (5th Cir. 2007); Connick v. Myers, 461 U.S. 138, 146, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983). If the Plaintiff carries the burden of proving each of these elements, the employer may nonetheless defeat the Plaintiff's claim if it demonstrates by a preponderance of the evidence that it would have taken the same action even in the absence of the protected conduct. Lukan v. North Forest Indep. Sch. Dist., 183 F.3d 342, 346 (5th Cir. 1999).

Sloan contends her hours were cut in retaliation for exercising her First Amendment rights. Sloan submits that her complaint to Ford was protected speech, and that Defendants' decision to cut her hours violated her rights under the First Amendment. For their part, Defendants maintain Sloan never complained to Ford about the alleged harassment, and even if she did complain, her speech was nothing more than a private employment dispute and was not speech entitled to First Amendment protection. Defendants also insist that even if it were protected speech, Sloan's complaints to Ford had no bearing on the decision to cut her hours; rather, that decision was based solely on the deficiencies in Sloan's job performance.

Three considerations are involved in the determination whether a public employee's speech is constitutionally protected:

> First, it must be determined whether the employee's speech is pursuant to his or her official duties. If it is, then the speech is not protected by the First Amendment. Second, if the speech is not pursuant to official duties, then it must be determined whether the speech is on a matter of public concern. Third, if the speech is on a matter of public concern, the Pickering test must be applied to balance the employer's interest in promoting the efficiency of the public services it performs through its employees.

Davis, 518 F.3d at 312 (footnotes and citations omitted).

"For an employee's speech to qualify for First Amendment protection, he must be speaking 'as a citizen on a matter of public concern.'" Nixon, 511 F.3d at 497 (quoting Garcetti v. Ceballos,

547 U.S. 410, 418, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006)). The Supreme Court's recent decision in Garcetti "holds that before asking whether the subject-matter of particular speech is a topic of public concern, the court must decide whether the plaintiff was speaking 'as a citizen' or as part of her public job." Davis, 518 F.3d at 512 (citing Mills v. City of Evansville, 452 F.3d 646, 647-48 (7th Cir. 2006)). The Garcetti decision established that "[a]n employee is not speaking as a citizen – but rather in his role as an employee – when he 'make[s] statements pursuant to [her] official duties.'" Id. (quoting Garcetti, 547 U.S. at 418, 126 S. Ct. 1951). "Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen." Garcetti, 126 S. Ct. 1960. Here, the parties do not contend and the Court does not find that Sloan's speech complaining of alleged sexual harassment was pursuant to her official job responsibilities. Rather, the Court must determine whether such speech was a matter of public concern.

"[W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." Connick, 461 U.S. at 146, 103 S. Ct. At 1684. "A court must therefore discern the purpose of the employee's speech–that is, whether she spoke on behalf of the public as a citizen, or whether the employee spoke for herself as an employee." Morgan v. Ford, 6 F.3d 750, 754 (11th Cir. 1993) (citations omitted). To do this, the Court considers the content, form, and context of a given statement, as revealed by the whole record. Id. "A court may consider the employee's attempts to make the concerns public, along with 'the employee's motivation in speaking.'" Id.

14

After reviewing the record, the Court finds there is no evidence that Sloan's complaints focused on anything other than her own individual harassment[3]. Further, although not conclusive, Sloan never attempted to air her complaints in a manner that would call the public's attention to the alleged wrong. Although sexual harassment may be a matter of public concern under certain circumstances, in the context in which it was presented in this case by Sloan, the Court finds it was a purely personal and private matter. As such, Defendants are entitled to summary judgment on Sloan's First Amendment retaliation claim.

D.  Equal Protection

Sloan alleges TPSD is liable for denying her rights to equal protection of the law, as she was treated differently from male persons who were not sexually harassed, and because she was treated differently from white females. Specifically, Sloan asserts that Shannon never sexually harassed white females, or males of any race, but did harass her. Sloan contends such action constitutes a denial of equal protection of the law. In moving for summary judgment, Defendants' sole argument is that on June 9, 2008, in the case of Enquist v. Oregan Dept. of Ag., et. al, 128 S. Ct. 2146, 2008 WL 2329768 (June 9, 2008), the United States Supreme Court ruled that "class-of-one" equal protection claims have no place in the public employment context. Defendants proclaim that the Enquist decision bars Plaintiff's equal protection claim in this case.

Equal protection claims traditionally have been limited to circumstances in which an individual is treated less favorably by the government because of his membership in a protected

---

[3] This case is distinguishable from Wilson v. UT Health Center, 973 F.2d 1263 (5th Cir. 1992). In Wilson, the Fifth Circuit found that the plaintiff's reporting of harassment was a matter of public concern protected by the First Amendment. However, in Wilson unlike the present case, the plaintiff was reporting the harassment of other female officers as well as herself. Therefore, the reporting of harassment in Wilson was not a *purely* personal matter.

15

class. Williams v. Bramer, 180 F.3d 699, 705 (5th Cir. 1999). However, in Village of Willowbrook v. Oleck, the Supreme Court held that the Equal Protection Clause gives rise to a claim on behalf of a "class of one" when membership in a particular class is not alleged. 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000). A "class of one" action may be maintained under 42 U.S.C. § 1983 for violations of the Equal Protection Clause of the Fourteenth Amendment when the Plaintiff alleges that only he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Oleck, 528 U.S. at 564, 120 S. Ct. 1073. Defendants contend that because Sloan is the sole Plaintiff in this case establishes, in and of itself, that this is a "class of one" equal protection claim. The Court disagrees as Plaintiff has alleged she was treated less favorably because of her membership of a protected class; therefore, her claim does not fall under the "class of one" theory of equal protection, and her claim is not barred by the United States Supreme Court's ruling in Enquist.

"[S]exual harassment in public employment violate[s] the Equal Protection Clause of the Fourteenth Amendment" and is therefore actionable under § 1983. Southard v. Tex. Bd. of Criminal Justice, 114 F.3d 539, 550 (5th Cir. 1997). Thus, the initial question is whether Shannon's behavior amounts to actionable sexual harassment.

Section 1983 and Title VII are "parallel causes of action." Cervantez v. Bexar County Civil Serv. Comm'n, 99 F.3d 730, 734 (5th Cir. 1996). Accordingly, the "inquiry into intentional discrimination is essentially the same for individual actions brought under sections 1981 and 1983, and Title VII." Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996). As demonstrated above, Title VII requires that actionable harassment be severe or pervasive. The Court applies the same standard under § 1983. Because Sloan's behavior as alleged, was severe, it creates an

actionable § 1983 claim about which there is a genuine issue of material fact; therefore, summary judgment is not appropriate.

E.   Tortious Interference with Employment

Sloan has alleged a state law claim against Shannon for malicious interference with her employment. To succeed on her claim, Sloan must show that Shannon's actions "(1) were intentional and willful; (2) were calculated to cause damage to the plaintiff engaged in a lawful business; (3) were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant; and (4) resulted in actual damage and loss." Hammons v. Fleetwood Homes of Miss., Inc., 907 So. 2d 357 (Miss. Ct. App. 2004). Shannon's defense to this allegation is that he was not involved in the decision-making process to cut Sloan's hours. Although Shannon admits he discussed the issue with Ford and Hatch, the ultimate decision to cut Sloan's hours was made by Ford and approved by Hatch.

Sloan alternatively argues that if the Court finds that Shannon was a decision maker on Sloan's cut in hours, his involvement would be privileged. A person occupying a position of trust on behalf of another is privileged, within the scope of that responsibility and in the absence of bad faith, to interfere with the principal's contractual relationship with a third person. Hammons v. Fleetwood Homes, 907 So.2d 357, 361 (Miss. 2005).

Ford testified that during the meeting about Sloan's performance issues, Hatch and Shannon both agreed to support Ford on his decision to cut Sloan's hours as Ford was not satisfied with her performance. Moreover, Hatch also testified that during this meeting, Shannon stated that if an officer was not meeting Ford's expectations as a security officer then they need to get somebody that can do what needs to be done. Therefore, the Court finds Shannon participated in the decision to

17

cut Sloan's hours; however, because Sloan contests that the specific incidents related to her job performance even occurred, the Court finds there is a genuine issue of material fact on the issue of bad faith. Shannon is not entitled to summary judgment on Sloan's claim for tortious interference with employment as it relates to her reduction in hours.

As to the decision to transfer Sloan to Tupelo High School, Hatch testified that he made that decision with the assistance of Dr. George Noflin, Assistant Superintendent of TPSD, and James Turner, director of Human Resources for TPSD. Hatch further stated that in light of Sloan's sexual harassment allegations, he thought it would be best to move her to another location away from Shannon. There is no evidence in the record that Shannon in any way participated in the decision to move Sloan to Tupelo High School. Accordingly, Shannon is entitled to summary judgment on Plaintiff's claim for tortious interference with employment as it relates to Sloan's transfer to Tupelo High School.

F.     Intentional Infliction of Emotional Distress

Plaintiff seeks damages from defendant for intentional infliction of emotional distress. "The standard for intentional infliction of emotional distress in Mississippi is very high: [a] defendant's conduct must be wanton and wilful and [such that] it would evoke outrage or revulsion." Hatley v. Hilton Hotels Corp., 308 F.3d 473, 476 (5th Cir. 2002) (internal quotations and citations omitted). As explained by the Mississippi Supreme Court, conduct constituting intentional infliction of emotional distress must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Speed v. Scott, 787 So. 2d 626, 630 (Miss. 2001) (quoting Pegues v. Emerson Elec. Co., 913 F. Supp. 976, 982 (N.D. Miss. 1996)). "[L]iability does not extend to mere insults,

indignities, threats, annoyances, petty oppression, or other trivialities." Raiola v. Cheveron U.S.A., Inc., 872 So. 2d 79, 85 (Miss. Ct. App. 2004) (citation omitted). Additionally, "[a] claim for intentional infliction of emotional distress will not ordinarily lie for mere employment disputes." Lee v. Golden Triangle Planning & Dev. Dist., Inc., 797 So. 2d 845, 851 (Miss. 2001). Indeed, "'[o]nly in the most unusual cases does the conduct move out of the realm of an ordinary employment dispute into the classification of extreme and outrageous, as required for the tort of intentional infliction of emotional distress.'" Grice v. FedEx Ground Package Sys., Inc., 925 So. 2d 907, 912 (Miss. Ct. App. 2006) (quoting Prunty v. Arkansas Freightways, Inc., 16 F.3d 649, 654 (5th Cir. 1994)).

Although the sexual nature of the comments allegedly made by Shannon to Sloan were egregious, the Court finds this matter does not rise to the extremely high standard required to be actionable as an intentional infliction of emotional distress claim. Therefore, Shannon is entitled to judgment as a matter of law on Sloan's intentional infliction of emotional distress claim.

G. Negligent Infliction of Emotional Distress

Plaintiff did not file a notice of claim pursuant to the Mississippi Tort Claims Act and, therefore, concedes her claim for negligent infliction of emotional distress will not lie. Accordingly, Defendants' Motion for Summary Judgment is granted as to Plaintiff's claim for negligent infliction of emotional distress.

## IV. Conclusion

Based on the foregoing analysis, Defendants' Motion for Summary Judgment [48] and Supplemental Motion for Summary Judgment [60] are GRANTED in part and DENIED in part. Specifically, Defendants' motions are GRANTED as to Plaintiff's claims for Title VII retaliation

as it relates to Plaintiff's transfer to Tupelo High School, First Amendment retaliation, tortious interference with employment as it relates to Plaintiff's transfer to Tupelo High School, intentional infliction of emotional distress, and negligent infliction of emotional distress. Further, Defendants' motions are DENIED as to Plaintiff's claim for sexual harassment, Title VII retaliation as it relates to Plaintiff's cut in hours, violation of equal protection, and tortious interference with employment as it relates to Plaintiff's cut in hours.

A separate order in accordance with this opinion shall issue this day.

**SO ORDERED**, this the 29th day of April, 2009.

                                           **/s/ Sharion Aycock**
                                           **UNITED STATES DISTRICT JUDGE**